## UNITED STATES *v.* GRISWOLD.

*(District Court, D. Oregon. February 24, 1880.)*

1. ARREST IN CIVIL ACTIONS—RIGHT TO DISCHARGE.

In the absence of any statute directly authorizing the discharge of a defendant in arrest who is not charged in execution within a certain time after judgment, the court may assume that his discharge was contemplated by law, and should be granted, unless the plaintiff, within a reasonable time, should charge him in execution.

2. SAME—RULE OF COMMON LAW.

Where it appears that the rule of the common law is that if plaintiff obtained judgment against "a defendant prisoner," and did "not charge such defendant so remaining in prison in execution of the judgment within two terms next after obtaining such judgment," reckoning the term wherein judgment was obtained as one, the defendant may obtain his discharge, it will be assumed that this rule applies to the case, and supplies the omission in the statute of the state.

*Addison C. Gibbs,* for plaintiff.

*William W. Paige* and *George H. Durham,* for defendant.

DEADY, D. J. On May 27, 1877, the United States, by B. F. Dowell, commenced an action against the defendant, under sections 3490–94 of the Revised Statutes, for certain penalties and damages on account of the violation of section 5438, in knowingly making, presenting, and obtaining payment from the treasury of the United States, in January, 1874, of certain false claims, commonly called the Jesse Robinson claims, and purporting to be for expenses incurred by C. S. Drew, quartermaster of the Oregon militia, in fitting out and maintaining the Jesse Walker expedition to protect the immigrants on the southern Oregon immigrant trail, between the Humboldt river and the southern boundary of the state, between August 3 and November 6, 1854.

On June 2d the district judge, under section 3492 of the Revised Statutes, and upon the complaint in the action, verified by the oath of said Dowell, made an order for the arrest of the defendant, and fixed his bail at the sum of $10,000, to be given in the manner and with the effect provided in sections 108–9 of the Oregon Civil Code regulating the giving of bail upon arrest in civil actions, and on June 4th the defendant was arested and gave bail accordingly.

Afterwards the defendant moved to strike the complaint from the files, because it was not signed by the district attorney nor any one authorized to represent the United States, and to be discharged from arrest because there was no affidavit, other than the complaint filed before the allowance of the same, nor undertaking filed before the arrest was made; and on October 9th said motion was denied. See 5 Sawy. 25. Between April 23 and May 20, 1878, the case was tried with a jury, who were discharged without giving a verdict, three of them being for the defendant. A second trial resulted, on December 14th, in a verdict for the plaintiff in the sum of $35,228, upon which, on January 11, 1879, there was a judgment accordingly. See published opinion of that date on denying motion for new trial. Afterwards the defendant was surrendered by his bail, and on March 4th his counsel moved for his discharge from custody, because no execution had been issued on the judgment against the person. On the following day, after argument, the motion was denied, it appearing that an execution had been issued against property and not yet returned, citing Norman v. Manciette, 1 Sawy. 487, in which the court held that the plaintiff, in a judgment where the defendant is liable to arrest, has, at least, until "the return of the execution against property, to take out execution against the body, and that, in the mean time, if the defendant has been arrested provisionally, he must remain in the custody of the sheriff or his bail, or satisfy the judgment."

On April 1st, after the return of the execution against property unsatisfied, the motion for the defendant's discharge was renewed, but before it was decided, namely, on April 22d, the judgment against him was reversed on error in the circuit court, because of an instruction given to the jury upon the trial, to the effect that the defendant was chargeable with knowledge of the fraudulent character of the claims in question obtained by his agents thereabout in the course of their agency, but not communicated to him,—the circuit and district judges concurring therein,—whereupon the motion was abandoned.

On a third trial, on July 28th, a verdict was found for the plaintiff in the same amount as before, upon which, on July 30th, judgment was given accordingly.

On November 26, 1879, the motion for discharge from the provisional arrest was renewed upon the ground that an execution against property had been issued upon the judgment and returned *nulla bona*, and was finally argued and submitted on February 10th.

On the argument of the motion, a point was made by one of the counsel for the defendant that this arrest was illegal and void, because it was made on the verified complaint in the action, and not an affidavit merely, and also without a previous undertaking on the part of the plaintiff for costs and damages, as provided in section 107 of the Oregon Civil Code in the case of an action between private persons. But this point not being stated in this motion, and having been distinctly made and passed upon in the motion before judgment for the discharge of the defendant, as appears in the opinion in 5 Sawy., *supra*, will not now be further considered.

The only question arising upon this motion is where the defendant in a civil action is arrested before judgment, and remains in arrest until judgment is given therein, or is thereupon surrendered by his bail, when may he have a *supersedeas* and discharge from such arrest unless he is charged in execution thereon?

At common law the preliminary arrest in civil actions was made upon a *capias ad respondendum*, the purpose of which, as its name implies, was only to secure the appearance of the defendant in court to answer the plaintiff on the return-day of the writ, and the party either remained in the custody of the sheriff until that time, or gave him special bail for his appearance.

Upon the return-day the defendant appeared by putting in bail, as it was called, to the action, failing which the bail for his appearance was forfeited. The bail to the action was an undertaking that the defendant would satisfy any judgment obtained against him, or render himself a prisoner upon the execution thereon. 3 Bl. Comm. 290, 291.

A judgment at common law for the payment of money might be enforced by an execution against the body, called a *capias ad satisfaciendum*, in all cases in which the defendant might have been arrested in the first instance upon a *capias ad respondendum*, and the purpose and effect of it was to keep the body of the debtor in close custody until the judgment was satisfied. 3 Bl. Comm. 414, 415.

The arrest in this case, as has been stated, was made under an act of congress, but under section 914 of the Revised Statutes the subsequent proceedings thereon are governed by the law of the state.   Indeed, the arrest itself might have been made under section 106 of the Oregon Civil Code, which authorizes an arrest in civil actions for a penalty or a fraud.   Sections 108 and 109 of such Code provide that the defendant shall be discharged from the arrest in a civil action "at any time before execution," either upon giving bail or making a deposit in lieu thereof, and that the undertaking of the bail must be "to the effect that the defendant shall at all times render himself amenable to the process of the court during the pendency of the action, and to such as may be issued to enforce the judgment therein.

From this it appears that the bail given upon the provisional arrest under the Code is not merely the special bail of the common law given to the sheriff for the appearance of the defendant in the action, but it is also the equivalent in operation and effect of the common-law bail to the action, by which the sureties therein undertook that the defendant would satisfy any judgment that might be given against him, or render himself in execution thereof upon process against his body to enforce the same, whenever lawfully required.

At common law the plaintiff might have an execution against the body in the first instance, but could not thereafter have one against the defendant's property, except in special cases, as where the defendant escaped, died, or was discharged under the insolvent act without satisfying the judgment.   Ordinarily, the taking of the body in execution was considered a discharge of the judgment, and a satisfaction of the debt.   3 Bl. Comm. 415; *Jackson* v. *Benedict*, 13 Johns. 535; *Sunderland* v. *Loder*, 5 Wend. 59; *Wakeman* v. *Lyon*, 9 Wend. 242; *Chapman* v. *Hatt*, 11 Wend. 423; *Poucher* v. *Holly*, Id. 185; *Beaty* v. *Beaty*, 2 Johns. Ch. 431.

The Oregon Civil Code; §§ 272, 276, gives the plaintiff an execution against the body in all cases where the defendant might have been arrested before judgment, but only "after the return of the execution against property unsatisfied in whole or in part," and by section 277 it is provided that a person arrested on execution shall be imprisoned until it is satisfied, or he is legally discharged.   By title 2 of chapter 28 of Mis. Laws, provision is made for the discharge of persons confined upon execution, upon the surrender of their property; but it is also therein provided (Or. Laws, § 21, p. 628) that the judg-

ment, notwithstanding such imprisonment and discharge, may be thereafter enforced against the property of the defendant.

At common law an execution, either against the body or the property, might issue, of course, within a year and a day from the entry of the judgment. 3 Bl. Comm. 421; 1 Arch. Pr. 281; Atty. Pr. K. B. 278, 401; St. Westminster, 2; 13 Ed. I. *c.* 45; 3 Bac. Abr. 407.

By the law of this state (Or. Civ. Code, §§ 271, 292) an execution may issue, of course, at any time within five years after the entry of judgment; but, as has been stated, the execution against the body cannot issue until one against the property has been returned unsatisfied. Id. § 276. From this it appears that at common law the plaintiff might take the body of the defendant on execution, of course, within a year and a day from the entry of judgment, and may do so under the law of this state within five years of such entry.

But there is no statute of this state which prescribes, directly or in effect, within what time, after judgment, a defendant in arrest is entitled to be discharged, unless taken upon execution issued thereon. By the New York Code, § 288, it is provided that where the defendant is "in actual custody under an order of arrest," and the plaintiff neglects to issue execution against the person of the defendant for three months after the entry of judgment, the defendant may be discharged from custody, unless good cause to the contrary be shown. As to what was the practice at common law upon this point, counsel has not cited any authority, and I have been inclined to the opinion that, in the absence of any positive rule or practice to the contrary, the defendant is not entitled to be discharged so long as the plaintiff is entitled to charge him in execution, which is five years from the entry of the judgment, according to the statute of this state, and according to the common law a year and a day. Upon this theory of the law counsel for the plaintiff contend that the defendant cannot be discharged from this arrest for five years from the judgment, and upon the view most favorable to the defendant he would not be entitled to such discharge until the expiration of a year from that date.

But the law of this state having provided that a judgment debtor in custody upon an execution may be finally discharged from imprisonment upon a surrender of his property subject to execution, and as such discharge cannot take place while the defendant is in custody upon the arrest before judgment, it may be said that the purpose and the operation of the law providing for the discharge of a judgment debtor upon the surrender of his property would be hindered and

denied if the plaintiff could compel such debtor to remain in custody upon the arrest before judgment until he saw proper to take him on execution.

Further, the object of the arrest before judgment being merely to hold the person of the defendant so that if he does not satisfy any judgment which may be obtained against him, his body may be taken upon an execution to enforce the same, it may be said that if the plaintiff does not exercise the right to take the body of the defendant in execution within a reasonable time, the defendant ought to have a remedy by a *supersedeas* and discharge. And, upon further reflection, these considerations have the effect to incline my mind to the conclusion that, in the absence of any statute directly authorizing the discharge of a defendant in arrest, who is not charged in execution within a certain time after judgment, the court might say that his discharge was contemplated by the law, and should be granted, unless the plaintiff, within what might be considered a reasonable time, under the circumstances, should charge him in execution.

But, upon further examination of the matter, I find that, according to the first volume of the Attorney's Practice in the Court of King's Bench, 366, a work published in 1759, the rule in that court was that if the plaintiff obtained judgment against "a defendant prisoner" and did "not charge such defendant so remaining in prison, in execution of the judgment, within two terms next after obtaining such judgment," reckoning the term wherein the judgment was obtained as one, the defendant may obtain his discharge; citing in the margin, as authorities, Carth. 469; 2 Strange, 943, 1153, 1215.

Assuming, as I do, that this is the rule of the common law, it applies to the case and supplies the omission in the statute of the state. It authorizes the defendant's discharge in case the plaintiff neglects to charge him in execution, and prescribes the time beyond which he is entitled to it.

The judgment in this case was given at the July term, 1879, and this is the November term of the same year, and the second term thereafter within the rule. This term expires on the day before the first Monday in March next, when another term begins. If the plaintiff does not charge the defendant in execution before that time he may then apply for his discharge, and it will be granted him, of course. The present motion, however, being premature, is denied.