THE MICAMOLD RADIO CORPORATION, Plaintiff, *v.* WILLIAM BEEDIE, as Treasurer, General Manager and Organizer of the RADIO FACTORY WORKERS UNION, LOCAL No. 18609, an Unincorporated Association of More than Seven (7) Members, Defendant.*

Supreme Court, Kings County, August 10, 1935.

*Abraham J. Rosenblum,* for the plaintiff.

*Mendel Lurie,* for the defendant.

CROPSEY, J.   In this action the plaintiff seeks an injunction.   The matter involved is a labor dispute.   At the close of the trial the court decided the facts in favor of the plaintiff and, in effect, held that an injunction should issue unless the provisions of chapter 477 of the Laws of 1935 prevented such issuance.   Briefs were invited upon the applicability of this statute and as to its constitutionality, should its applicability be determined.   So far as the briefs reveal, this question has never been passed upon in this State.

The statute amends the Civil Practice Act by adding to it a new section numbered 876-a.   The enactment, however, embodies more than merely adding the new section.   In its first section it declares what the policy of the State is.   This provision recites that equity procedure that permits a complaining party to obtain injunctive relief without an adequate hearing of the responding party or only after a hearing based upon written affidavits and not upon the examination and cross-examination of witnesses in open court is " peculiarly subject to abuse in labor litigations."   The statute proceeds to state the reasons for such declaration, namely, the *status quo* cannot be maintained but is necessarily altered by the injunction; determination of issues of veracity upon affidavits that are contradictory is subject to grave error; error in issuing the injunctive relief is usually irreparable to the opposing party, and delay incident to the normal course of appellate practice frequently makes ultimate correction of error in law or in fact unavailing.

---

* See, also, *Kronowitz* v. *Schlansky* (156 Misc. 717).

The new section added (876-a) is headed " Injunctions issued in labor disputes." It provides: " 1. No court nor any judge　*　*　* shall have jurisdiction to issue any restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute, as hereinafter defined, except after a hearing, and except after findings of all the following facts by the court or judge *　*　*　to be filed in the record of the case."

The facts to be found are the following:

" (a) That unlawful acts have or a breach of any contract not contrary to public policy has been threatened or committed and that such acts or breach will be executed or continued unless restrained;

" (b) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;

" (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial thereof than will be inflicted upon defendants by the granting thereof;

" (d) That complainant has no adequate remedy at law;

(e) That the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection; and

" (f) That no item of relief granted prohibits directly or indirectly any person or persons from doing, whether singly or in concert, any of the following acts:

" (1) Ceasing or refusing to perform any work or to remain in any relation of employment;

" (2) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any agreement, undertaking or promise;

" (3) Paying or giving to, or withholding from, any person any strike or unemployment benefits or insurance or other moneys or things of value;

" (4) By all lawful means aiding any person who is being proceeded against in, or is prosecuting any action or suit in any court of the United States or of any state;

" (5) Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, picketing, patrolling any public street or any place where any person or persons may lawfully be, or by any other method not involving fraud, violence or breach of the peace;

" (6) Ceasing to patronize or to employ any person or persons;

" (7) Assembling peaceably to do or to organize to do any of the acts heretofore specified or to promote lawful interests;

" (8) Advising or notifying any person or persons of any intention to do any of the acts heretofore specified;

" (9) Agreeing with other persons to do or not to do any of the acts heretofore specified;

" (10) Advising, urging or inducing without fraud, violence or threat thereof, others to do the acts heretofore specified;

" (11) Doing in concert of any or all of the acts heretofore specified on the ground that the persons engaged therein constitute an unlawful combination or conspiracy or on any other grounds whatsoever."

The second subdivision of the section provides in part that " Such hearings shall be held only after a verified complaint and a verified bill of particulars specifying in detail the time, place and the nature of the acts complained of and the names of the persons alleged to have committed the same or participated therein have been served and after due and personal notice, in such manner as the court shall direct, has been given to all known persons against whom relief is sought and also to the public officers charged with the duty to protect the complainant's property." This also provides that the hearing shall be in open court with the opportunity of cross-examination and the right to submit testimony in opposition and that no affidavit shall be received in support of any of the allegations of the complaint.

Subdivision 3 provides that " No temporary injunction or restraining order shall be issued except on condition that plaintiff shall first file a minimum undertaking of one thousand dollars." There is a further provision that where there is more than one defendant the undertaking shall be increased in a given amount but that the maximum undertaking shall not exceed $10,000.

The fourth subdivision reads: " No injunctive relief shall be granted to any plaintiff who has failed to plead and prove compliance with all obligations imposed by law which are involved in the labor dispute in question, or who has failed to allege and prove that he has made every reasonable effort to settle such dispute either by negotiation or with the aid of any machinery of mediation or voluntary arbitration, provided for by law or contract between the parties."

Subdivision 5 provides that no injunctive relief shall be granted except to prohibit such specific acts as may be expressly complained of in the complaint and the bill of particulars and expressly included in the findings of fact, and that such injunctive relief shall be binding only upon the parties to the suit, their agents, servants and employees, or those in active concert or participation with them and who shall by personal service or otherwise have received actual notice of the same.

The sixth subdivision provides that no officer or member of any association, and no association participating in a labor dispute, shall be held responsible in any civil action at law or suit in equity, or in any criminal prosecution, for the unlawful acts of individual officers, members or agents, " except upon proof by the weight of evidence and without the aid of any presumptions of law or fact, of (a) the doing of such acts by persons who are officers, members or agents of any such association or organization, and (b) actual participation in, or actual authorization of, such acts, or ratification of such acts after actual knowledge thereof by such association or organization."

The seventh subdivision reads: " Every temporary injunction and restraining order shall by its terms expire within such time after entry as the court or judge may fix, not to exceed ten days, unless the plaintiff is ready by the expiration of that period to proceed to trial and shall pay the necessary calendar and trial fees."

The eighth subdivision reads: " No permanent injunction shall remain in force for more than six months from the date on which the judgment is signed, provided, however, that the duration of the injunction may be extended for another six months, if after a further hearing initiated and conducted in the same manner as the original hearing the court shall determine that the injunction shall be continued or modified in accordance with the findings of facts on the subsequent hearing."

Subdivision 9 provides for the furnishing of the stenographer's minutes where " any temporary injunction in a case involving or growing out of a labor dispute " shall be granted or denied and for the prompt hearing of any appeal therefrom.

Subdivision 10 defines a labor dispute and when a case shall be held to involve or to grow out of such a dispute.

The second section of the chapter in question provides that if any provision of the act is held invalid, the remainder of it shall not be affected thereby. Section 3 repeals all acts inconsistent. Section 4 makes the act take effect immediately. The act was approved and so became effective April 25, 1935.

It is conceded that the matters involved are a labor dispute within the definition of the statute, also that the acts forming the basis of the action occurred some time before the statute was enacted and, further, that the action was begun prior to its passage.

The complaint herein does not conform to the provisions of the new section, nor is there any bill of particulars in the case. In fact, so far as the court knows, no demand for a bill was ever made. The defendant pleaded a counterclaim but in his brief concedes that that will not lie and that it must be dismissed.

Does the new statute apply to situations that had arisen before its enactment and especially where an action had been already brought thereon? Those are the questions to be considered.

The general rule is that statutes are to be construed as prospective only in the absence of a clear expression of the legislative purpose that they should have a retroactive application. (*Jacobus* v. *Colgate*, 217 N. Y. 235, 240; *Union Pacific Railroad Co.* v. *Laramie Stock Yards Co.*, 231 U. S. 190, 199.) There is an exception to the general rule and that is where the statute works a change in the form of remedies (*Jacobus* v. *Colgate, supra*) or " the mode of attaining or defending rights " (*Sackheim* v. *Pigueron*, 215 N. Y. 62, 73). The exception, however, is not as broad as it is sometimes loosely stated to be and it does not apply to enactments which affect the substance of the remedy as distinguished from the form.

There is nothing in the statute in question which even suggests that it is to have a retroactive effect. Moreover, its provisions plainly are not limited to mere changes in the mode of procedure. The defendant urges that the provisions of the statute are no more than declarations, specifications or illustrations of existing equitable principles without substantial change. This may be true as to some of the clauses in the first subdivision such as (a), (b), (d) and (f). But it seems doubtful that that could be said of clause (c). This requires " that as to each item of relief granted " greater injury will be inflicted by the denial of an injunction than by the granting of it. To require that each item be weighed with entire defeat of jurisdiction if any item does not scale, is clearly more than the ordinary general balancing of equities. Under such a provision it might be that in case of a strike on breach of a labor union contract, the court would have to deny the employer an injunction on finding that he had suffered less by the breach than the strikers had gained by it. And clause (e) seems still more serious. It requires a finding " that the public officers charged with the duty to protect the complainant's property " have failed or been unable to do so. This is obviously more than a specification of clause (d) immediately preceding, referring to absence of adequate remedy at law, which is defendant's claim. This clause is not by its terms confined to police officials but extends to higher executives and to require the finding that all of those had failed lifts the fact from a mere " conventional assertion " (so characterized by Frankfurter and Greene in " The Labor Injunction," p. 222) to an essential to retention of jurisdiction and would seem to require proof that all possible public officers had failed, right up to the need of calling out the troops, and might be the equivalent of saying that no injunction shall issue until martial law has been invoked. This

clause is evidently copied from the national act (Mason U. S. Code Supp. No. 3, tit. 29, § 107; U. S. Code, tit. 29, § 107). Aside from this, this required finding seems to be unprecedented in injunction suits. So also, though perhaps less markedly, is the requirement in paragraph 4 that plaintiff must fail if he has not alleged and proved that he has made every reasonable effort to settle the dispute either by negotiation, mediation or arbitration. If the Legislature has intended by this that the courts, before granting an injunction against acts of violence, must impose as a condition precedent that a plaintiff be inexcusably assaulted or his property despoiled by strikers, must first negotiate, mediate or arbitrate with his assailants or despoilers, it certainly has made a very substantial change in equity. We have pointed out only some of the provisions which show plainly that the act does not relate to the form of the procedure. There are others.

The reference to some of the pertinent authorities may not be out of place.

In *Isola* v. *Weber* (147 N. Y. 329) it is held that the provision of the Constitution of 1894 that in an action to recover damages for injuries resulting in death, the amount recoverable should not be subject to any statutory limitation, did not operate retrospectively and hence did not affect causes of action which had accrued before it became effective. The opinion of the Court of Appeals in that case adopted the reasoning of the opinion of the General Term in the First Department in *O'Reilly* v. *Utah, Nevada & California Stage Co.* (87 Hun, 406). There the court, referring to the constitutional provision, said that a new right and liability were created, and not merely a new remedy provided, and was not retroactive in effect (pp. 411, 412).

In *Jacobus* v. *Colgate* (*supra*) a statute providing that actions might be brought in this State to recover for damages to real property outside the State was held not retroactive and not to give a right to maintain an action to one who had suffered such damages previous to its adoption. CARDOZO, J., writing for the court, said that as there had been no remedy at law previous to the enactment, the statute, in effect, created a right of action.

In *Matter of Berkovitz* v. *Arbib & Houlberg* (230 N. Y. 261) it was held that the Arbitration Law was " applicable to pre-existing contracts, but not to pending actions " (p. 269). There the court held that an arbitrator should be appointed where there was a dispute between the buyer and seller of goods and the contract provided for arbitration and the seller sought such an appointment, although the contract was made before the Arbitration Law was passed. In the same case it was decided that where a contract for

the sale of goods had been made before the Arbitration Law was passed, but the contract provided for arbitration, and there came a dispute which resulted in litigation, and that after the action had been pending for some time the Arbitration Law was enacted, it did not apply to that litigation.

In *Sackheim* v. *Pigueron* (*supra*) the amendment to the Civil Code, which provided that on the trial of an action to recover damages for causing death, the contributory negligence of the person killed should be a defense to be pleaded and proven by the defendant, was held applicable on the trial of then existing actions — this on the ground that it established a rule of evidence and merely affected the order of proof.

In *Fitzpatrick* v. *International R. Co.* (252 N. Y. 127) it is held that the statute of Ontario, Canada, giving a right to an injured person to recover for another's negligence, even though himself guilty of contributory negligence, applied and that the burden of proving contributory negligence was upon the defendant. The court held that the act of Ontario did more than affect a matter of procedure and that it " gives a right to recover not recognized by the common law " (p. 134). For this reason it was held that the law of New York had no application. The opinion does not refer to the *Sackheim* case by name but it recognizes that a statute which merely placed upon the defendant the burden of proving contributory negligence did not affect the substantive right to recover (p. 134).

In *Blyer* v. *Hershman* (156 Misc. 349), an action in the City Court of New York, New York county, the applicability of another new statute to existing actions was involved. The amendment was the addition of section 73 to the Domestic Relations Law, the section providing that the negligence of a parent or other custodian was not to be imputed to an infant. The court (WENDEL, J.) held that the statute was not retroactive and did not apply to existing actions, and that it affected a change in substantive law.

In *Addiss* v. *Selig* (264 N. Y. 274), section 55-a of the Insurance Law, providing that the beneficiary or assignee of a policy of life insurance other than the insured should be entitled to its proceeds as against the creditors of the insured, was held not retroactive and not to apply to pre-existing creditors. This was the holding notwithstanding that the statute by its terms applied to policies theretofore issued, and the court said that it might well apply to such policies but could not affect the rights of creditors existing at the time when the statute was enacted.

The foregoing review demonstrates that the statute will not have a retroactive effect where it would destroy a right or create a

liability previously existing. The statute in question, if it were to be held to be retroactive, might take away a right of action previously existing. It cannot be given such an effect.

But even if it could be deemed to apply to pre-existing conditions, it would not be applicable to existing actions arising out of those conditions. (*Matter of Berkovitz* v. *Arbib & Houlberg, supra.*) As already pointed out, the complaint does not allege a number of matters required by the statute. It may be that some of those matters could not be either alleged or proved. At the time plaintiff's cause of action arose and the action was commenced, there was no requirement of law that plaintiff should do some of the things now specified in the statute to be a prerequisite. To hold that the action would not lie because of such omissions would be to work a great injustice and in determining the matter of applicability " in the end, it is in considerations of good sense and justice that the solution must be found." (*Matter of Berkovitz* v. *Arbib & Houlberg, supra,* p. 271.)

Furthermore, if the act should be held to be retroactive, it would apply only to the granting of *ex parte* and temporary injunctions and not permanent ones. The distinction between *ex parte* or temporary injunctions and permanent ones is patent. The former are the creature of statute. In the absence of such authority, a court of equity in this State has no inherent absolute power to grant interlocutory injunctions. (*Bachman* v. *Harrington,* 184 N. Y. 458, 462.) On the other hand, the power to grant permanent injunctions is not given by statute but is inherent and the provisions of the Code, now Practice Act, do not relate to them. Those provisions relate only to *ex parte* or temporary injunctions. An interlocutory injunction is granted by order and not by judgment and is a provisional remedy and temporary in its character. A permanent injunction is in no sense a provisional remedy. It is granted by judgment and is final as its name indicates. (*Jackson* v. *Bunnell,* 113 N. Y. 216, 220.) All the provisions of the Civil Practice Act relating to injunctions are contained in articles which are included under the heading " Provisional Remedies " (Laws of 1920, chap. 925). The amendment in question is to one of those articles and its provisions must have been intended to apply only to injunctions which are provisional remedies, namely, *ex parte* and temporary ones. In fact, the policy of the State, as recited in the enactment, which has been referred to in the earlier part of this opinion, clearly demonstrates that the grievance was not with reference to permanent injunctions but only with reference to interlocutory ones. Most of the provisions in the amendment do not even in terms mention a permanent injunction. The only reference in the entire

statute to an injunction entered upon a judgment is in subdivision 8. This merely provides that no such injunction shall remain in force more than six months. A permanent injunction can be granted only as the result of a trial. (*Hurlbutt* v. *Reid,* 190 App. Div. 176, 178.)

Our Appellate Division in *New York Lumber Trade Assn.* v. *Lacey* (245 App. Div. 262) recently had this amendment urged upon it as a ground for reversing an injunction granted in the lower court. There the judgment had been entered before the amendment had been adopted. The Appellate Division declined to pass upon the effect of the statute, stating that its decision was limited to questions that had been presented to the court of original jurisdiction.

There is a case in the Court of Appeals of Louisiana, cited by defendant, which reversed a judgment granting an injunction because of the provisions of the statute although the statute was not enacted until after the judgment had been entered (*Dehan* v. *Hotel & Restaurant Employees, etc.,* 159 So. 637). The opinion there is not a very illuminating one and although it points out that the right to an injunction in that State is not a constitutional one, but is granted only by statute and may be enlarged or limited at the will of the Legislature (p. 647), it, in effect, concedes that the injunction was properly granted by the lower court because it says it is not concerned with the correctness of that decision. The gist of the decision seems to be (p. 647): " Under Act No. 203 of 1934 [the statute in question] we are without jurisdiction to issue an injunction in the case at bar, and should we affirm the decision rendered below, we would be perpetuating an injunction which the law expressly declares cannot now be issued. The courts in this state would be and are powerless to enforce it, if it were perpetuated by an affirmance here." The act there in question was an anti-labor injunction act, also modelled on the Federal act. The court also said, in effect, that that statute only changed a remedy and not a substantive right. That holding does not accord with the reason of the authorities in this State that the retroactive effect can only be as to form and mode of the remedy and not as to its substance.

The defendant also cites *DeAgostina* v. *Odean-Roosevelt Corp.,* a decision by the Appellate Division in the First Department. No opinion was rendered in affirming the judgment in that case (244 App. Div. 782). The briefs in the Law Library show that the act in question was urged to sustain on appeal the denial of a temporary injunction refused long before the statute was enacted. Thus, there was nothing to indicate that even as to the temporary injunction the court thought that the act applied.

Another case cited by defendant is *Levering & Garrigues Co.* v. *Morrin* (71 F. [2d] 284). This was a decision by the Circuit Court of Appeals in the Second Circuit. There was an appeal from a decree of final injunction and the reversal ordered was because of the supposed retroactive application of the Federal act. The discussion of the application of the act was as slight as in the Louisiana case and was secondary to a discussion of constitutional points. It points out that an amended complaint had been made after the enactment of the statute but that the decree could not be entered as the court had not the power to grant the injunction. The court states that the power to issue an injunction may be taken away and that it is not " in the class of inherent attributes " (p. 287). Further mention is made of the fact that Congress might withdraw the jurisdiction of the District Court (p. 288). And as in the Louisiana case, no notice was paid to the distinction between mode or form and substance of a remedy. The only cases cited for the conclusion of retroactive effect are *Duplex Printing Press Co.* v. *Deering* (254 U. S. 443) and *Paine Lumber Co.* v. *Neal* (244 id. 459). Both of those cases arose under the so-called Clayton Act which permitted private litigants to seek injunctive relief for violation of the Sherman Anti-Trust Law. They seem to be of very doubtful aid to defendant upon the determination of the question being considered.

The principle underlying the decisions in this State require a holding that the statute in question does not have retroactive effect. It is, therefore, unnecessary to consider the question of its constitutionality.

It follows that the plaintiff is entitled to judgment, with costs. Findings and judgment may be settled upon notice.